Mr. Clerk, would you call the next case, please? 11252 People v. Daryl Trisby Would you counsel both step up and identify yourselves? Good morning, Your Honor. Sean O'Toole with the Office of the State Appellate Defender on behalf of the appellant, Daryl Trisby. Sean Enright, Assistant State's Attorney on behalf of the people. Okay. Please have a seat. May it please the Court. Your Honor, the issue in this case is very straightforward. Officer Tucker conducted a warrantless search of Daryl Trisby, and such searches are per se unreasonable under the Fourth Amendment unless the State can establish the existence of a recognized exception to the warrant requirement. The State contends in this case that the officers had the right to search Mr. Trisby as a search incident to an arrest with probable cause, but it cannot cite any precedent in which an arrest and search took place on grounds as thin as those presented here. The situation called for a Terry stop, and Officer Tucker simply went too far when he reached into Mr. Trisby's pocket. I ask this Court to conduct a de novo review of the suppression hearing and the legal issues therein and reverse the trial court's finding of probable cause. The State agrees that when the officer reached into Mr. Trisby's pocket, he needed probable cause because it was a search under the Fourth Amendment, and it was not a Terry stop and frisk, and therefore valid under mere reasonable suspicion. In fact, the State's brief vigorously opposes the notion that this was a Terry stop at all. So this is a problem for the State because at the time of the search, a reasonable person in Officer Tucker's position may have had reasonable suspicion, but he certainly did not have probable cause. The facts the State relies on, none of which were illegal on their face, involved nothing overtly illegal, and all involved conduct consistent with innocent behavior. With regard to the transaction, Officer Tucker witnessed a transaction between a woman in her 40s, a pedestrian, and a passenger in a vehicle, an exchange of currency. He did not see anything illegal during the exchange. He did not hear any solicitation of illegal controlled substances prior to the transaction, he did not stop the buyer, he did not determine if she had any controlled substances on her. The officer did not recognize either the buyer or the car, the vehicle, as one involved in controlled substances or any illegal behavior in the past. There were no informants or witnesses in this case who could have alerted the officer that criminal activity was taking place on this block. The officer knew, though, that this was a high narcotics area, right? There was a bald, conclusory statement at trial by the officer that this was a high narcotics area. Unrebutted. Uncontradicted. There was nothing specific attributable to the circumstances in this case that would give the officer an indication that this was an illegal activity. The officer didn't say that the narcotics activity in that neighborhood usually involved pedestrians and cars, or that they involved persons who fit the description of the buyer in this case, or that the car involved had any known prior activity, prior illegal activity, had any reputation for that. So I urge this court not to put too much weight on this unsupported, generalized statement about the criminal activity in the neighborhood. I think it's all too easy for an officer, after the fact, to say, well, this is a narcotics, high narcotics area, and attempt to justify an intrusive search on those grounds. But aren't we supposed to look at the totality of the circumstances? And by doing that, I mean, each, you build one upon another, and that's just one of the circumstances that should be considered in considering this. Certainly it's a factor. I just urge this court not to accord it a great amount of weight, given the generalized nature of the statement, and also the case law on this. I cite in my brief, People v. Moore. It was a case where the officers were witnessing a transaction outside of a tavern known for drug activity. The officer specifically testified that this tavern had involved drug transactions, gang activity, shootings. The officer sees a transaction right outside of that tavern, tries to approach the suspects, flee. The court in Moore held that there was not even reasonable suspicion. So the nature of the crime, the neighborhood, plus this conduct which on its face is not criminal, at that point does not even give the officer reasonable suspicion under case law. So the officer starts to follow the car. He curbs the car for lack of a turn signal. He doesn't see any evasive maneuvers, any erratic driving that would be indicative of a consciousness of guilt. When he approaches the car, he doesn't smell any odors, see any paraphernalia, anything that would give him an indication that drug use is going on in this car. And he sees the defendant, who he never says he recognizes as someone who has a reputation for this type of behavior. When he looks in the car, all he sees is the $10 bill, and he asks the defendant to place his hands on the headrest. Before that, doesn't the defendant make some type of furtive movement, moving his hand away quickly to his pocket? Yes. Yes, I believe there's one gesture prior to the order to put the hands on the handrest, and one or maybe two after. It's unclear from the officer's testimony and his reports. But, again, the gestures in and of themselves are not criminal on their face. Well, no, but as Justice Hyman says, it's a factor. It's a factor. It's certainly a factor. But when you look at the totality of the circumstances, I think you also look at what's not going on here. And, again, he doesn't smell anything. He hasn't heard any soliciting. He hasn't seen anyone he knows to be involved in criminal activity. He's just putting a transaction, which we know didn't even give him reasonable suspicion at that point, together with a gesture, which, again, on its own wouldn't give him reasonable suspicion. But the gesture happens over several times. It does happen several times. I'd point this court to People v. Cray, a case where the officer was following a car with illegal license plates and, I believe, loud music, where the officer pulled the car over after he saw the defendant shifting in a seat. It looked like he was placing something under his body. The court, again, no reasonable suspicion even just from those gestures, which to the officer might have been indicative of some sort of suspicious behavior, but certainly not enough to conduct a stop. When you take all these circumstances together, and you're saying it's not enough. Right. What is it that, in your view, what would the fact would have made a difference in your view? Well, I've given you a few things that weren't presented by the state, or by the officer in this case, that were not seen in this case. Let me just note, though, that the state doesn't cite any cases for you to analogize, unfortunately, and I think that's a big signal that there's a lot missing in this case. First of all, there's a single transaction. In most of the drug cases you see where the officer approaches someone they suspect is involved in a drug transaction, there's at least three transactions in a row. A lot of times there's specific information about either that corner or that building, such as in the United States for DeCasado, which is one of the cases I think is directly analogous. The state invites us to consider people versus grant, and in grant they say repetition is unnecessary, right? Well, grant is an entirely different case, Your Honor. Grant is a solicitation case. So the parties agree that if the officer in that case witnessed an actual solicitation, he had probable cause to arrest. The question before the court in that case was did the officer's testimony that the slang term he heard give him probable cause or give him reason to believe that the defendant in that case was actually soliciting marijuana? And the court noted that it often takes the officer's word that slang terms mean what they say they mean, and they cited federal case law where the same exact slang term was used to represent marijuana. But it was also in the context of violating a city ordinance of soliciting business in a public way or something of that nature. Correct. So it's sort of in relation to the ordinance being violated. Yes, the officer in that case actually saw the ordinance being violated. Once the court accepted his interpretation of that slang term, the officer saw a crime in that case. He wasn't really with the ordinance. He saw a violation of the ordinance, I'm sorry. And that's a distinction really, isn't it? Yes. A search incident to arrest in grant in here is just a search without an arrest preceding it. Well, yes, and I think the only way you can justify a warrantless search like this is if it is incident to arrest. The question is the same. It has to be probable cause. And I don't think in grant the issue was probable cause at all. I think it was the question of whether the officer actually saw a crime. And once the court accepted that slang term to mean what the officer said it meant, then the officer witnessed a crime. There was no question as to probable cause. Here, everything he saw was consistent with innocent conduct, and the state has cited no authority in which a transaction followed by a gesture is enough to be probable cause. Some of the other things the officer could have had was, like I said, informant or witnesses who had seen similar activity. The officer could have maybe heard soliciting from that car. That might have been a probable cause. The officer might have been able to hear, smell odors coming from the car. There's a variety of things in drug cases that give an officer probable cause. They were just absent here, and I think the state's lack of any analogous case law highlights that fact. The one case I'd point this court to is United States v. Casado, where a known drug spot, in contrast with this case, which was just a generalized high-crime area, a known drug spot was under surveillance when the defendant went into the drug house, was dropped off by a driver, came back outside 15 minutes later, conducts a transaction with his driver, and then is approached by the officers. He immediately puts a hand in his pocket, covers that pocket with his other hand. The officer tells him to remove his hand at gunpoint three times, and he refuses. And I'd argue that that gesture in itself was much more probative of illicit behavior than the hand movements here, which, like I said in my brief, could have been consistent with someone trying to answer a phone or scratching an itch or any variety of innocent conduct. In that case, he's deliberately ignoring an officer who has a gun pointed at him to move his hands out of his pocket. And the state in that case didn't even argue probable cause, Your Honors. The state argued reasonable suspicion in that case, and the court still found no reasonable suspicion. We had a transaction, we had a known drug spot, and we had these gestures. So in answer to your question, unfortunately, I don't have a specific case that could point you to where there is probable cause, but I think there's a lot of things that could have gone on here that would have given probable cause that are simply absent in this case. At least you have cases that could be used to say that we don't have probable cause here as opposed to what the state. Right, right. Yes. And I think there's cases that might show that there could have been reasonable suspicion here, too. But, again, the state is arguing that this is not a Terry situation. And, you know, maybe someone could have tried to flee. I mean, the courts have argued that that's indicative of probable cause, and all of that is absent here. So I think, you know, the weight of authority is on the side of suppression here. And I'd just like to point out that the state makes a comment in its brief that the intrusion here was just simply limited to a search of Mr. Trispy's pocket. And that's an inherent flaw in the state's argument, because the state's arguing that that search was justified by probable cause. But probable cause doesn't give the officer just the right to search the pocket. It gives the officer the right to arrest Mr. Trispy, take him to the station, hold him for up to 48 hours without the input of a detached neutral magistrate. So, you know, I'd urge this court to consider the ramifications of finding probable cause in a case where we have a couple of gestures and transactions consistent with innocent conduct, no overtly criminal activity, because in cases like these, if you're giving the officers license to search a pocket, you're also giving them license to take the defendant down to the station. And that's a significant intrusion. So if this court doesn't have any more questions, I'll reserve some time for rebuttal. Thank you. State. May it please the court. Sean Enright, Assistant State's Attorney on behalf of the people. The issue before your officers, your honors today, is whether Officer Tucker did have probable cause to search the defendant's pocket. And under the totality of the circumstances, all the circumstances from the beginning of when Officer Tucker first saw the defendant up until he actually conducted the search, does show that under the totality of the circumstances, the officer did have probable cause to conduct that search. Do you have any case that found probable cause under a situation like this? I mean, you criticize every case that they cite, but I didn't see any case that you rely on that is similar to this case. Right. We're asking the court to view this case based on the totality of circumstances in this case, and the facts here, and that, yes, there are, and that we did not find a case that exactly showed all of these things together. Find anything close? It's a, no, we did not. So, okay. So, as we're asking this court to show deference to the factual findings and the findings of the court below, the court below did find that Officer Tucker did testify credibly and was not impeached. And among his testimony, as was discussed, was that this was a high narcotics traffic area. The court found that he was credible in testifying to that. Let's assume we accept all of the trial court's factual findings, and the court's conclusion that there was a transaction, it's a narcotics area, and there was constant movement by the defendant. The question now is a question of law. What does all that mean? What does it amount to? Does it rise to the level to justify a search? Is there probable cause based on those factual findings? Yes, there is. When you start with the observed transaction, you see that the defendant accepted cash, paper currency. For what? I'm sorry? For what? In exchange for an unknown object. But, again, we're looking at the- That's not correct. I'm sorry? There's nothing wrong with it. There was no basis. Right. And the officer was prudent to wait and continue investigating before he conducted the search. And in addition to just a-it wasn't just an exchange by itself of cash for an unknown object. We have-it's 9 p.m. at night. It's the side of a road, again, in a high narcotics area. The officer had seen this 100 times as he testified, a similar transaction. So there's more circumstances than just an innocent exchange of money for some object on the side of the road. At what point does probable cause arise? In our argument, we maintain that probable cause arose when the officer approached the vehicle, was talking to the driver, witnessed two things. Both the defendant confirmed that he had seen what he had seen earlier. The defendant had cash, the $10 bill in his hand, which the officer had seen the defendant accept cash, and, again, that quick movement away from his pocket. At that point, we can argue that there was probable cause. But, again, the officer- Away from his pocket, not towards his pocket. It had been to his pocket. The testimony describes a movement away from the pocket as soon as the officer approached it. So in a narcotics area, the receipt of a $10 bill for an unknown purpose, an unknown object, if an object at all, and a subsequent stop in moving your hand away from your pocket. At that point, it's more probable than not that a crime has occurred. If you take into account the officer's experience and what he had seen before- All his experience is worth is that this is a high-crime area, and this is how narcotics transactions occur, sometimes from someone in a car to someone on the street. But it's how a lot of transactions occur. Isn't that right? Arguably, there's very few other kinds of transactions that would occur on the side of the road at night. And, again, it's this whole circumstance that the officer is witnessing.  And that's why he continued the investigation. Again, it wasn't just the transaction. The officer didn't curb the vehicle immediately after that. Well, maybe he had suspicion, but this is not a Terry stop. Right. I mean, you're going way beyond that. So, I mean, the Terry stop might be a whole different conversation here, right? That's right. Yeah, the officer didn't- We're taking these facts and then jumping ahead to the probable cause. Why do you do that? We're not asking the court to make any jump. We have, again, beyond the transaction, the observation, again, that this defendant had cash in his hand, reached away from his pocket. And, again, the officer was prudent and continued to investigate, waiting, and then after instructing this defendant to put his hands on the headrest. This is-a defendant wouldn't be reaching for his pocket in any innocent way after being instructed not to. And I'm not arguing that that's exactly what was happening. There's no innocent explanation for why someone may be moving their hand toward their pocket or away from their pocket? Once the officer makes the instruction not to reach for his pocket, there are far fewer innocent explanations at that point. He didn't fear for his safety, right? The officer did not testify fearing for his safety, and that's correct. Now, you seek leave to cite additional authority and invite the court's attention to People v. Grant. Would you argue for the court how Grant applies to the instant case? The finding in Grant, again, as you mentioned, is that repetitive actions are not necessary where there's other evidence. And we're arguing that Grant applies specifically to the- Well, not necessarily when police possess specific information, and that specific information was the drow drow and how they interpret that based on their experience. That's the specific. What's the specific here? We address Grant primarily to address the repetitive nature of- Is that general proposition? Well, that as in that the transaction contributed to probable cause, was one contribution to probable cause, a repetitive viewing of multiple transactions was not necessary, and that's the connection. Was not necessary in this case because the defendant in that case was hawking his product in an open and notorious way, in a way that the police, through their experience, interpreted to mean I have cannabis, I have hydroponic cannabis for sale, a specialized form of cannabis. So that was very specific and very probative and a significant factor in the totality of the circumstances that led to probable cause, right? It's certainly more specific than the transaction alone the officer viewed. But, again, we argue in that whole totality where you have the officer's experience having seen these kinds of transactions before. Again, it's late at night, on the side of the road, all of those things. You're correct that they're not as specific as specifically selling a certain brand of marijuana. They are, again, we're choosing to analogize it. It's certainly suspicious, right? That's right, yeah. It's certainly suspicious. But can we really say it's more probable than not that a crime has occurred here? More probable than not that the fruit of that crime was in his pocket? At the point of the transaction, that's more arguable. But, again, we are not arguing that this transaction, or even the singularity of the transaction by itself, contributed to probable cause. We are continuing to ask the court to view the totality up until the search was actually conducted. After the officer confirmed that there was cash in his hand, after multiple, between four and five, reaching movements, which were very specific to that pocket, and indicated to the officer that there was something in that pocket, more likely than not, based on the transaction, that it was contraband. How do you respond to counsel's argument relating to Casado? I'm sorry, relating to? Casado. So, Casado, there are a few differences to that case. First, we don't have as blatant a hand-to-hand transaction in Casado as we do in this case. In Casado, he goes into a building, there's radio noise, and he's going into a building and leaves the defendant. And the defendant hands something to his partner or his cohort. There's no exchange of money the other way. There's no exchange of anything the other way. It's simply handing his friend something. In that case, though, it's a little more significant in that building. They're surveilling because that's a narcotics dealer's building where they believe he sells drugs from. This is just a street, right? It's more focused, their suspicion, their belief, as it relates to that building versus this generalized area in the city. It is a different type of evidence or investigation. But in this case, you know, again, the officer had seen these exact transactions and similar ones in that neighborhood 100 times before. And so, again, it's a very- Do you think he conducted a search 100 times before? Every time he saw this type of activity? Do you think he really conducted a search every time he saw it? I can't say for sure, but I know in this case that he was prudent enough to wait and investigate further. And even after he saw the first furtive movement and confirmed what he saw, the cash in his hand, he continued to wait and investigate, waiting for the defendant to make that motion again two or three more times. And then, after being instructed not to do so again, he's outside of the car, he reaches again. So I can't testify, or I can't say whether the officer didn't testify, whether he had made searches based only on the transactions before. But I know that in this case, he waited for more probable cause. So would you agree that if he had initially stopped the defendant and then reached in his pocket without the furtive movement, it would have been an illegal search? That's a tougher case. Much. Yes, yeah. And, again, it's a tougher case, and we're not arguing either way. I'm not saying that he wouldn't have had probable cause, considering any other circumstances in that hypothetical. But for the purpose of our case, we are arguing that additional movements were necessary for probable cause. Doesn't this case really resemble U.S. v. Ingrot? Again, I emphasize the fact that we see a hand-to-hand transaction here with both parties. And, again, the acceptance of cash in Ingrot, we don't see that exact hand-to-hand. And we see, I believe, people going into a gangway and coming back with something. No one's exchanging anything. And, again, the kinds of furtive movements described in Ingrot are very generalized, looking back and forth. And in this case, we're looking at a very specific movement toward a specific part of the defendant's body, the defendant's clothing right to his pocket, where the officer searched first. The officer has some beliefs about what went on in that gangway and what usually goes on in that gangway, right? Yeah, that they had intelligence, I guess, that there was a drug dealer's house. But, again, we're emphasizing that it was important here that the officer saw the hand-to-hand transaction because that's the same kind of transaction that this officer had seen many times before. We say that. And the abstract seems to have import in these kind of cases when we say hand-to-hand transactions. But he saw a $10 bill exchanged. Really? I mean, that's really it. And he can't even be certain something was exchanged for it, really. He said there was an object. Again, you're right. He didn't see it. But I want to emphasize, again, that this is, again, a high narcotics traffic area. That's always going to be important when discussing this transaction. And, again, it's late at night. It's the side of the road. The officer knew what kind of transaction this was based on his experience. And we're arguing that those factors raise the probability that a crime was being committed above just a gangway. And, again, I can't speak to the specifics about what kind of investigation was going on in that case. But what I do know is that we have a hand-to-hand transaction. And, again, another distinguishing part of that case is that the furtive movements, if generalized under that term, were simply looking back and forth. And we maintain that looking back and forth has far more innocent explanations than the kind of reaching to a specific pocket that we see in this case. So the furtive movements in this case are far more specific and raise probable cause more than the furtive movements described in NGRAW. This may be a rhetorical question, but what's your best case? We have, again, we submitted a grant to you, the grant case, that showed what we believe lent more probable cause to the transaction, as I mentioned. The officer would not have, based on that case, we're submitting that the officer would not have had to wait for multiple transactions, especially considering this is a mobile drug deal. Essentially, the drug dealer was driving away and waiting for more transactions would have thwarted any kind of further investigation. So we're in new territory here, is what you're saying? With regard to, yeah, the multiple transactions. That's right. And once again, based on those arguments and the arguments we put forth in our brief, we ask that you affirm the defendant's conviction. Thank you. Very briefly, Your Honors. I think the fact that grant is their best case is telling, as Your Honors pointed out, the fact that the court did not require repetitive action in that case in order to find probable cause, because the officers actually witnessed a violation of the ordinance that was a violation on its face. And I think this court recognizes that. The time, the state points out that this is 9 o'clock at night. I don't think that's an hour where it's more likely than not that any activity on the street is criminal. I mean, it might be dark, but it's not 3 in the morning. The gesture did not result in any pulling anything out of the pocket, any dropping anything on the floor, which, again, when Your Honor asked about what's missing in this case, a lot of drug cases involve defendants who throw out a small object from their pockets. That did not happen here. If the defendant was reaching, if the officer thought the defendant was reaching, he'd probably expect to see something come out of that pocket. He never did in this case. The state puts a lot of emphasis on the officer's experience. But nothing the officer's, and I think it goes beyond a reasonable inference from that experience when the state repeatedly says that the officer saw hundreds of these similar transactions. The officer didn't say he saw hundreds of similar transactions between a 40-year-old woman and a car at 9 o'clock at night. He said he saw generally hundreds of different transactions. We don't know if those were buys on the corner, where typically there's two people on the corner, one retrieves the controlled substance, one takes the money. I think that might be what he was referring to. He didn't specifically say that he saw this exact type of transaction many times. With regard to Ingrayo, I don't think the state can distinguish based on the lack of a transaction in that case because there's so much more going on that I think it actually shows more of a suspicious behavior than a mere transaction in this case, as this court pointed out, which for all we know is an exchange of money. We didn't even see the object-handed bag if there was an object-handed bag. Ingrayo had a known drug trafficker's house. He's coming out. He goes to a club. The defendant in that case goes back to that same gangway, comes up carrying a bag, looks in all directions, and while the state points out that that's not a gesture, that the state tries to argue that's not a gesture, as overly suspicious as moving one's hands back and forth, the officers in that case did say that they found that suspicious. So taking the officers at a word, you have both the gesture. You have in that case a big bag coming out of a known drug trafficker's house. They follow the car. He goes to the same exact social club as the drug trafficker had just gone to, gets back in the car and heads to another club. I think they had far more suspicion in that case. Finally, I did not hear a compelling reason to distinguish Casado. There's a transaction in both cases. There's gestures in both cases. There's disobedience of the officers. And while the state wants to credit Officer Tucker for waiting until after the transaction occurred and pulling over the car and waiting until the defendant makes a few gestures, the officer was right to wait, but the officer had recourse under the Constitution to make his move at that point. But the move he had to make was a Terry stop. And when he went beyond the Terry stop, he violated the Fourth Amendment. So for those reasons, I'd ask this Court to reverse the trial court's decision at the suppression hearing and ultimately reverse the conviction. Thank you. Mr. Enright, I noted that from the brief that at the time it was prepared, you assisted in its preparation, and you were a law clerk and bar taker. Are you now a member of the bar? That's right. I was one of the members. Congratulations. Thank you. Gentlemen, thank you both very much for your arguments. The Court will take the matter under advisement.